UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paul McCartney, Craig Collopy, Jean Pierre Sylvestre, Joseph Trancho, Christopher Eckert,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>City of New York, Eric Adams, David Chokshi,<br><br>　　　　　　　Defendants. | 23-CV-8232 (NRM) (JAM)<br><br>**MEMORANDUM AND ORDER** |

NINA R. MORRISON, United States District Judge:

　　Paul McCartney, Craig Collopy, Jean Pierre Sylvestre, Joseph Trancho, and Christopher Eckert ("Plaintiffs") are former employees of the New York City Police Department who were terminated or forced to retire after refusing to comply with a City mandate ordering them to receive a vaccine for the COVID-19 virus. Plaintiffs bring this action against the City of New York, Mayor Eric Adams, and former health department Commissioner David Chokshi ("Defendants"), alleging that the mandate was selectively enforced in violation of the Equal Protection clause of the United States Constitution, and that the City took their property for a public use without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Defendants move to dismiss the entire action under Federal

1

Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons outlined below, Defendants' motion is GRANTED and the action is dismissed.

## BACKGROUND

### I. Factual History

The following facts are taken from Plaintiffs' Complaint, ECF No. 1,[1] and are accepted as true and construed in the light most favorable to Plaintiffs for purposes of this motion.

Plaintiffs are five former members of the New York City Police Department ("NYPD").  Compl. at 2, ECF No. 1.  Plaintiffs McCartney, Sylvestre, and Eckert were members of the NYPD's Emergency Service Unit ("ESU"), and Plaintiffs Collopy, Trancho, and Sylvestre were members of the NYPD Bomb Squad.  *Id.* at 3–4.  Defendant Eric Adams is the Mayor of New York City and David Chokshi was, at all relevant times, the Commissioner of the New York City Department of Health and Mental Hygiene.  *Id.* at 8.

In October of 2021, Chokshi ordered all City employees — including Plaintiffs — to receive a vaccine protecting them from COVID-19.  *Id.* at 16.[2]  "[O]n December

---

[1] Pincites refer to page numbers generated by CM/ECF, and not the document's internal pagination.

[2] Throughout the complaint, Plaintiff makes many claims regarding the dangerousness of COVID-19, the effectiveness of the various COVID-19 vaccines, and the scientific principles behind said vaccines.  *See, e.g.*, Compl. at 16 ("As of October 2023, the COVID-19 'vaccine' is nothing more than another optional, seasonal shot. . . . It never was the panacea Defendant[]s falsely claimed it to be."); *id.* at 15 ("No Vaccine stopped the transmission of any COVID-19 variants."); *id.* at 14 ("[B]y 2021, COVID-19 caused symptoms consistent with a cold or mild flu."); *id.* at 18

13, 202[1]," Chokshi "issued a new Mandate" requiring private sector employees to be vaccinated, but Adams never enforced the Private Sector Mandate. *Id.* at 17. Additionally, in March of 2022, Adams issued an executive order excluding professional athletes and performers from the Private Sector Mandate. *Id.* at 23.

In the Complaint, Plaintiffs allege that the risk of contracting COVID-19 did not just exist in spaces where City employees worked, but rather it "existed in every public place people in the City gathered." *Id.* at 15. Plaintiffs thus allege that "[i]n a City with approximately 8.4 million residents[,] Defendants decided that only City workers, such as Plaintiffs, had to get vaccinated against a [v]irus that could be transmitted anywhere, by anyone, at any time." *Id.* at 30.

All Plaintiffs refused to receive the COVID-19 vaccine and were either terminated or forced to retire between May and October of 2022. *Id.* at 10–13. Plaintiffs had planned to work for the NYPD until they could not physically do so any longer. *Id.* at 25. Throughout their employment with the NYPD, Plaintiffs made annual pension contributions. *Id.* To be eligible to receive retirement, Plaintiffs must work at least 20 years, which they all had done. *Id.* at 25–26. The City guaranteed that that they would receive their pensions upon retirement. *Id.* at 25. The City also promised to provide health benefits to Plaintiffs and their families after their

---

("COVID-19 Vaccines alter its recipient's cellular biology because it manipulates ribosomes to produce spike proteins which in turn are released and trigger an immune response."). These claims are not relevant to the disposition of the instant motion.

3

retirements. *Id.* at 26. However, because of their termination or forced retirements, Plaintiffs are now ineligible for health benefits or their pensions. *Id.* at 30.

## II.  Procedural History

On November 6, 2023, Plaintiffs brought the instant action in the Eastern District of New York. *See* Compl. The Complaint alleged four causes of action: (1) a violation of the Equal Protection Clause of the Fourteenth Amendment and the New York Constitution Article I Section 11, against the City of New York; (2) a claim of selective enforcement in violation of the Fourteenth Amendment of the United States Constitution and the New York Constitution Article I Section 11, brought against Adams and Chokshi under 42 U.S.C. § 1983; (3) a violation of the Due Process Clause of the Fourteenth Amendment, brought against Adams and Choshki pursuant to 42 U.S.C. § 1983; and (4) a violation of the Fifth Amendment Takings Clause brought against the City of New York. *See id.* at 27–36.

On February 2, 2024, Defendants filed a letter with the Court requesting a pre-motion conference in anticipation of filing a motion to dismiss the action. *See* ECF No. 10. On May 30, 2024, a premotion conference was held before the Court. *See* 6/3/24 Minute Entry. At that premotion conference, Plaintiffs agreed to withdraw Counts One and Three — their Equal Protection claims against the City of New York and Substantive Due Process claims against Defendants Adams and Chokshi — along with their claims under the New York State Constitution.[3] This left Plaintiffs' claims

---

[3] As Count 2 is only brought against the individual Defendants, and not the City, the claims under the New York State Constitution must be dismissed as there

4

for (1) selective enforcement under the Equal Protection Clause, and (2) their Fifth Amendment claim under the Takings Clause before the Court.  On November 4, 2024, Defendants' fully briefed motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on both claims, along with Plaintiffs' opposition, was filed with the Court.  *See* ECF No. 23.

## LEGAL STANDARD

Defendants seek dismissal of all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) allows a party to assert that the complaint fails to state a claim upon which relief can be granted.  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, allegations in the complaint that "are no more than conclusions[] are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  This means that "a formulaic recitation of the elements of a cause of action will not do," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor will a complaint which simply "tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (alterations adopted) (quoting *Twombly*, 550 U.S. at 557).

---

is no private right of action available to Plaintiffs under New York law when there is "an alternative remedy under § 1983 for alleged violations of parallel provisions of the United States Constitution."  *Josie v. City of New York*, 21-cv-2486 (ARR) (RER), 2023 WL 3765063, at * 17 (E.D.N.Y. June 1, 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 408–09 (S.D.N.Y. 2021) (MKV).

5

## **DISCUSSION**

### I.   Selective Enforcement

To bring a selective enforcement claim under the Equal Protection Clause, Plaintiffs must plausibly allege that they were (1) selectively treated, "compared with others similarly situated," and (2) that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations." *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992).  Plaintiffs argue that, with regard to the first prong of the selective enforcement claim, the comparator group of persons who are "similarly situated" to them and who have not been subject to the mandate consists of "every other unvaccinated person living and working in the City."  Pl. Opp. at 10, ECF No. 23-9.[4]   Defendants contend that Plaintiffs' selective enforcement claim must fail because they "have not sufficiently pled that they bear a close resemblance to any similarly situated individuals who received more favorable treatment than" them.  Def. Mem. at 12, ECF No. 23-1.  This Court agrees with Defendants.

To plead a selective enforcement claim, sometimes referred to in the Second Circuit as a *LeClair* claim, Plaintiffs must assert that "they were treated differently than an identifiable, similarly situated group of individuals for malicious reasons."

---

[4] They also appear to claim that the proper similarly situated comparators are the "over eight million" people in the City of New York, making it unclear if they are claiming they are similarly situated to all New Yorkers or all *unvaccinated* New Yorkers.  Pl. Opp. at 12.  The distinction, however, is not important for the purposes of Defendants' motion.

6

*Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006) (CM) (MDF) (citing *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980)).[5] To allege a selective enforcement claim, a Plaintiffs *must* point to a "comparator who received more favorable treatment from the defendants" than they did. *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019). In a selective enforcement claim, Plaintiffs must point to comparators whose circumstances "bear a reasonably close resemblance" to their own. *Id.* at 96 (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). While the comparators' circumstances need not be identical, Plaintiffs must be "similarly situated in all material respects to the individuals with whom [they] seek[] to compare [themselves]." *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

The Second Circuit has cautioned that determining whether comparators are similarly situated is a "fact-intensive" inquiry often not appropriate for resolution on a motion to dismiss. *See id.* at 97. However, to survive a motion to dismiss, while Plaintiffs are not required to *prove* the similarity between themselves comparators, they are still required to *plead* the existence of valid comparators. When this pleading standard is not met, courts in this Circuit have not hesitated to dismiss claims of selective enforcement. *See, e.g., Kane v. City of New York*, No. 22-cv-1339

---

[5] It is also permissible to bring a "class of one" equal protection violation claim. However, Plaintiffs confirmed at the premotion conference on May 30, 2024, that this claim was limited to a selective enforcement *LeClair* claim. *See* Tr. of 5/30/2024 Conference at 9 ("The Court: I just wanted to see if this was [a] Class-of-One or Selective Enforcement [claim]. [Plaintiffs' Counsel]: You are right, Your Honor, it's a *L[e]Clair* Selective Enforcement claim.").

7

(KAM) (LB), 2022 WL 17553307, at *3 (E.D.N.Y. Dec. 9, 2022) (finding no selective enforcement claim where the plaintiff only made "generalized allegations" of comparator groups); *Parkash v. Town of Southeast*, No. 10-cv-8098 (VB), 2011 WL 5142669, at *8 (S.D.N.Y. Sept. 30, 2011) (dismissing a selective enforcement claim when the operative complaint only included "a conclusory reference to unspecified similarly situated persons"). Here, Plaintiffs have not pled the existence of similarly-situated comparators.

Plaintiff essentially argues that every person in New York City, or at least every City resident who did not receive the COVID-19 vaccine between October 2021 and October 2022, is a similarly situated comparator. *See* Pl. Mem. at 12 ("Plaintiffs literally identify over eight million comparators. Tourists in Times Square, the barber at the local barbershop, patrons of bars and restaurants, . . . are all comparators because they — like Plaintiffs, were exposed to the [v]irus and able to transmit it." (citations omitted)). Plaintiff argues that "[i]n the context of a public health outbreak of disease, everyone exposed to the disease is similarly situated." *Id.* Yet Plaintiff has offered *no* caselaw from any jurisdiction in which a legally cognizable comparator group is simply "all other people in a city or town." Nor is this Court aware of any such precedent. In fact, multiple courts within this circuit have found that proposed comparator groups in similar circumstances that are *less* broad cannot survive a motion to dismiss. *See, e.g.*, *Sutton v. Adams*, 23-cv-3880 (JPO), 2024 WL 2137966, at *5 (S.D.N.Y. May 13, 2024) (finding that all "private sector employees" do not bear a "reasonably close resemblance" to "City employees" in the context of the

8

COVID-19 Vaccine Mandate); *Village of Mamaroneck*, 462 F. Supp. at 555 (referring to the allegation that "similarly situated" individuals could include "all other person's in [the town]" as a "contention [that] borders on the ridiculous"). In this case, there is nothing that binds "all other New Yorkers" or "all other unvaccinated New Yorkers" with the Plaintiffs besides the fact that they share a universal risk — contracting the COVID-19 virus. However, sharing a universal risk does not equate to sharing such relevant qualities such that Plaintiffs bear a "reasonably close resemblance" to all New Yorkers for purposes of a selective enforcement claim. *Hu*, 927 F.3d at 93. There are many risks that all New Yorkers share to various degrees — like the risk of being injured in a traffic accident. It does not follow that a *LeClair* selective enforcement claim of a certain traffic law could be brought which claimed a similarly situated group of "all New Yorkers." To hold as much would be to reduce the requirement of pleading a similarly situated comparator to a nullity.

Plaintiffs argue that the Supreme Court's decision in *National Federation of Independent Business (NFIB) v. OSHA*, 595 U.S. 109 (2022), "has already determined that Plaintiffs are similarly situated to every other unvaccinated person living and working in the city." Pl. Opp. at 11. Indeed, the Supreme Court in *NFIB* did explain that COVID-19 is a "universal risk" similar to "crime, air pollution, or any number of communicable diseases" and not just an "occupational hazard." *NFIB*, 595 U.S. at 118. However, the Supreme Court was addressing OSHA's authority to adopt a "broad public health regulation . . . that is untethered . . . from the workplace." *Id.* at 119. The Court's holding and reasoning in *NFIB* does not speak to whether various

9

categories of people who might contract COVID-19 were similarly situated to one another for purposes of a selective enforcement claim.

Plaintiffs' reliance on *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), and *C.F. v. New York City Dep't of Health & Mental Hygiene*, 139 N.Y.S.3d 273 (N.Y. App. Div. 2020), is equally unavailing. *See* Pl. Opp. at 12. While the court in *C.F.* does refer to "all persons situated in an area where a contagion has been unleashed," the court was considering a board's authority to require vaccinations of all people within that area. *See C.F.*, 139 N.Y.S.3d at 284–85. This Court cannot find any indication that the Appellate Division considered whether the people within that area were "similarly situated" or bore a "reasonably close resemblance" to one another such that the reasoning could be imported to a selective enforcement claim. Similarly, nowhere in *Jacobson* does the Supreme Court hold that all citizens exposed to a smallpox outbreak in Cambridge were "similarly situated," as Plaintiff contends, *See* Pl. Mem. at 12, but rather, that it is within the state's police power to require vaccinations to ensure "public health and the public safety when endangered by epidemics of disease." *See Jacobson*, 197 U.S. at 37.

Plaintiffs have failed to identify any cognizable "comparator" whose circumstances bear a "reasonably close resemblance" to Plaintiffs and who has been treated differently. *See Hu*, 927 F.3d at 93. Thus, Plaintiffs' selective enforcement claim under the Fourteenth Amendment must be dismissed. Moreover, to the extent that the Complaint may be read to assert a claim under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), against the City for selective enforcement, that

claim must also fail, as Plaintiffs have failed to state a claim for the underlying constitutional violation.

## II. Takings Claim

Plaintiffs allege that the vaccine mandate violated their rights under the Fifth Amendment's Takings Clause, which is applied to the states through the Fourteenth Amendment. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023). The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const., Amdt. 5. Plaintiffs' claim is that because they had a protected property interest in their pensions and their careers, and the vaccine mandate worked to "deprive[]Plaintiffs of the full economic benefit of their pensions without just compensation," New York City has violated the Takings Clause. *See* Pl. Opp. at 15–17.

There are two sorts of takings recognized by the law: physical takings and regulatory takings. *See Meriden Trust and Safe Deposit Co. v. F.D.I.C.*, 62 F.3d 449, 454 (2d Cir. 1995). Plaintiffs have not alleged a "physical taking," as that would require "the government [to] directly appropriate[] private property for its own use." *Eastern Enters. v. Apfel*, 524 U.S. 498, 522 (1998). Rather, as when the government institutes a "wage freeze" that may interfere with a plaintiff's contractual rights, Plaintiffs appear to be alleging that the City's vaccine mandate was a "public program [which] adjust[ed] the benefits and burdens of economic life to promote the common good." *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). This falls into the

11

category of a regulatory taking.

A regulatory taking can either be categorical in nature, where a regulation "completely deprive[s] an owner of *all* economically beneficial use of her property," *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005), or a non-categorical taking, which "requires an intensive *ad hoc* inquiry into the circumstances of each particular case," *Buffalo Tchrs.*, 464 F.3d at 375. It is unclear which sort of regulatory taking Plaintiffs plead, as the Complaint outlines the *Penn Central* balancing test, *see* Compl. at 36, which governs non-categorical takings, and their opposition memorandum claims a categorical taking as outlined in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), *see* Pl. Mem. at 15–16. However, Plaintiffs fail to plead a government action that resembles a regulatory taking in any form.

For the purposes of this order, the Court will accept that Plaintiffs' interests in their pensions and healthcare are "property" in the context of a takings claim. *Cf. Buffalo Tchrs.*, 464 F.3d at 375 ("We will assume for purposes of this appeal that the wage increase provisions of appellants' contracts constitute property under the Takings Clause."). However, the issue with Plaintiffs' claim is that the vaccine mandate they challenge did not interfere with that right. The cases to which Plaintiffs cite involve a regulation *directly* interfering with a plaintiff's property right, be it categorically or non-categorically. *See, e.g.*, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 533 (analyzing a case where the Hawaii legislature sought to protect independent gasoline dealers by "limit[ing] the amount of rent that an oil company may charge a lessee-dealer"); *Lucas*, 505 U.S. at 1008 (considering a situation where

12

the state's regulation prohibited a landowner from constructing single-family residences to protect the coastline).

Here, the challenged regulation did not itself deprive Plaintiffs of their pensions, nor is there any allegation that the Plaintiffs' pensions were "taken for public use." Rather, the mandate "[o]rdered Plaintiffs — as well as every City employee — to get vaccinated against COVID-19." Compl. at 16. The "common good" that the City intended to "promote," *Penn Central*, 438 U.S. at 124, was one in which all City employees were ordered to receive a COVID-19 vaccine. It was wholly unrelated to any regulation of Plaintiffs' pensions or health benefits. The fact that Plaintiffs chose not to receive the COVID-19 vaccine and as a consequence of that choice had their employment with the City terminated does not transform the City's mandate into a regulatory taking. *Cf. Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425, 443 (S.D.N.Y. 2022) (AKH) (noting that a COVID-19 law which placed restrictions on restaurants did not constitute a categorical taking even if plaintiffs fully closed their restaurants because they "were not *required* to close under the Executive Orders." (emphasis in original, alterations adopted, and internal quotation marks omitted)); *id.* ("Plaintiffs do not plausibly allege a categorical taking because they do not allege that their property was taken for a public use, or used in any way by the government.").

Thus, the Court finds that Plaintiffs have not stated any claim for relief under the Takings Clause, and this Count must be dismissed.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss is granted in full. The clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

　　*/s/ Nina R. Morrison*　　
NINA R. MORRISON
United States District Judge

Dated: September 23, 2025
　　　Brooklyn, New York

14